525 F.Supp. 393 (1981)
HOME FEDERAL SAVINGS AND LOAN ASSOCIATION OF the SOUTH, a corporation, Jefferson Federal Savings and Loan Association, a corporation, First Federal Savings and Loan Association, City Federal Savings and Loan Association, a corporation, Plaintiffs,
v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, a Delaware Corporation, Defendant.
Civ. A. No. CV 81-G-1569-S.
United States District Court, N. D. Alabama, S. D.
October 20, 1981.
*394 W. S. Pritchard, Jr., William S. Pritchard, III, Pritchard, McCall, Jones, Spencer & O'Kelley, Birmingham, Ala., for Home Federal Sav. & Loan.
Douglas Corretti, Birmingham, Ala., for Jefferson Federal.
L. Burton Barnes, Lange, Simpson, Robinson & Sommerville, Frank Dominick, Dominick, Fletcher, Yeilding, Acker, Wood & Lloyd, Birmingham, Ala., for First Federal Sav.
Thomas W. Christian, Thomas A. Carraway, Rives & Peterson, Birmingham, Ala., for defendant Merrill Lynch.

MEMORANDUM OPINION
GUIN, District Judge.
This cause is presently before the court on defendant's motion to dismiss. Four savings and loan associations filed this action against Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch). Plaintiffs allege that the defendant is receiving a brokerage fee in connection with the issuance of All Savers Certificates (ASC) by California Federal Savings and Loan Association (California Federal) in violation of regulations promulgated by the Depository Institutions Deregulation Committee (DIDC).
*395 The factual allegations of the complaint, which Merrill Lynch has not denied, concern transactions in which Merrill Lynch accepted orders from its customers for ASCs, and placed those funds with California Federal. Merrill Lynch transferred customers' funds on deposit in its accounts to California Federal by wire transfer. California Federal allegedly pays Merrill Lynch a brokerage fee of one percent of all funds placed by Merrill Lynch with California Federal for ASCs. The plaintiffs contend that this fee should be considered as an additional yield on the ASCs, making the yield higher than allowed by law, and resulting in the loss of tax exempt status of the ASC to the customer. As a result of this allegedly impermissible conduct, the plaintiffs assert that Merrill Lynch is diverting funds from the local market and circumventing the intent of the Economic Recovery Tax Act of 1981, through which Congress created the ASC.
The regulation that plaintiffs assert has been violated, promulgated in October of 1980, provides:
Any fee paid by a depository institution to a person who introduces a depositor to the institution must be paid in cash when paid for deposits subject to interest rate ceilings, and will be regarded as a payment of interest to the depositor for purposes of determining compliance with interest rate ceilings....
12 C.F.R. § 1204.110 (emphasis added). The other regulation upon which plaintiffs rely, 12 C.F.R. § 1204.116, describes ASCs and requires depository institutions to provide a specific notice to customers of the amount of interest that may be excluded from gross income for federal income tax purposes. Plaintiffs assert in their complaint that Merrill Lynch has not issued the notice required by the regulation. It is obvious from the regulation itself that it is the responsibility of the depository institution, in this case California Federal, to issue the required notice; the broker, Merrill Lynch, is not responsible for the issuance of such notice.
Plaintiffs' suit is concerned entirely with alleged noncompliance with two DIDC regulations. These regulations were issued pursuant to the Depository Institutions Deregulation Act, 12 U.S.C. §§ 3501 et seq. There is no provision for enforcement of such regulations except in 12 U.S.C. § 3507. Section 3507 provides that compliance with regulations issued by DIDC shall be enforced by the Federal Home Loan Bank Board (FHLBB), under 12 U.S.C. § 1464(d). This section gives the FHLBB enforcement powers with respect to savings and loan associations, and expressly provides for suits by the FHLBB against federal savings and loan associations such as California Federal [12 U.S.C. § 1464(d)(3)(C)], as well as suits by federal savings and loan associations (such as plaintiffs in the present case) against the FHLBB [12 U.S.C. § 1464(d)(1)]. No express private right of action, however, is given to federal savings and loan associations to seek to enforce the provisions of the deregulation act or regulations promulgated thereunder as against other federal savings and loan associations, much less as against Merrill Lynch or similarly situated entities.
Plaintiffs argue that Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), supports plaintiffs' argument that such a private cause of action may be implied from DIDC regulations. Plaintiffs would read Cort v. Ash as calling for the implication of private remedies for anyone who can claim to be an intended beneficiary of the law or regulation. In support of their claimed status as intended beneficiaries of the Tax Act, the plaintiffs refer to the legislative history of the act.
The legislative history of the All Savers legislation indicates that it was the intent of Congress to infuse new money into the ailing savings and loans industry, to create a savings incentive by providing for tax-free income on savings, and to channel money to qualified institutions in order to provide affordable mortgage financing. The plaintiffs argue that Congress intended to benefit local savings and loans and local housing markets. Although the court would like to find such an intent to benefit the local market, the excerpts from the Congressional Record submitted by plaintiffs' *396 counsel do not support such a conclusion. Only one statement by one congressman referred to the concern for the "lack of savings in local banks and savings and loans ...." 127 Cong.Rec. H3136 (daily ed. June 18, 1981) (remarks of Congressman Harkin). The court concludes that this single reference is insufficient to support the conclusion that this legislation was enacted to benefit local savings and loans. There is absolutely nothing in the legislation itself that would require that ASCs be purchased only from those qualified institutions that are located in the area in which the purchaser resides, and this court will not imply such a requirement.
It is clear, however, that savings and loan associations in general are intended beneficiaries of the Tax Act. The plaintiffs assert that this fact alone is sufficient to create an implied right of action in their behalf. The Supreme Court has recently made clear that such an interpretation of Cort v. Ash is incorrect.
In Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), plaintiffs sought creation of a private right of action under the Investment Advisors Act, 15 U.S.C. §§ 80b-15. The district court declined to create a private right of action and dismissed the complaint. The Court of Appeals for the Ninth Circuit reversed. The United States Supreme Court affirmed in part, and reversed in part. The Court was willing to imply a private right of action for voiding a contract, since § 215 of the act expressly declared investment advisors' contracts void if their formation or performance violated the act. In other words, congressional intent that a private right of action be implied was clear from the statute itself.
The Supreme Court declined, however, to recognize a private cause of action for damages, noting the enforcement provisions contained in the act, including fines, imprisonment, and civil actions by the Securities Exchange Commission. "In view of these express provisions for enforcing the duties imposed by Section 206, it is highly improbable that `Congress absentmindedly forgot to mention an intended private action.'" 444 U.S. at 20, 100 S.Ct. at 247, 62 L.Ed.2d at 155.
The Court then endeavored to correct the impression, apparently shared by plaintiffs in this action, that under Cort v. Ash, if a statute can be conceived to be for the benefit of plaintiffs, plaintiffs may effect the creation of a private right of action. After noting that even in Cort v. Ash the central inquiry was whether Congress intended to create, either expressly or by implication, a private cause of action, the Court stated:
The statute in Touche Ross by its terms neither granted private rights to the members of any identifiable class, nor proscribed any conduct as unlawful. Touche Ross & Co. v. Redington, 442 U.S. at 576 [99 S.Ct. at 2489, 61 L.Ed.2d 82.] In those circumstances it was evident to the Court that no private remedy was available. Section 206 of the Act here involved concededly was intended to protect the victims of the fraudulent practices it prohibited. But the mere fact that the statute was designed to protect advisers' clients does not require the implication of a private cause of action for damages on their behalf. Touche Ross & Co. v. Redington, supra, at 578 [99 S.Ct. at 2490, 61 L.Ed.2d 82]; Cannon v. University of Chicago, supra, 441 U.S., at 690-693 [99 S.Ct. at 1954-1955, 60 L.Ed.2d 560]; Securities Investor Protection Corp. v. Barbour, supra, 421 U.S., at 421 [95 S.Ct. at 1738, 44 L.Ed.2d 263]. The dispositive question remains whether Congress intended to create any such remedy. Having answered that question in the negative, our inquiry is at an end.
444 U.S. at 24, 100 S.Ct. at 249, 62 L.Ed.2d at 156.
As to the present case, 12 C.F.R. § 1204.110 prohibits nothing. It merely provides when brokerage fees will be included in interest. Also, 12 C.F.R. § 1204.116 prohibits nothing. It merely requires depository institutions such as California Federal to provide a notice to customers. Enforcement rights with respect to these regulations are expressly set forth in 12 *397 U.S.C. §§ 3507 and 1464(d), and are not thereby, or elsewhere, granted to savings and loan plaintiffs as against a broker defendant.
The applicable statutes [12 U.S.C. § 3507 and 12 U.S.C. § 1464(d)] exhaustively specify rights of action. Those rights of action are exclusively rights of action between savings and loan associations on the one hand and the FHLBB on the other. It cannot conceivably be argued that anything in applicable statutes or regulations calls for the implication of a private right of action in favor of one federal savings and loan association against another, much less a savings and loan association against, as in this case, a broker.
As to implication of private rights of action, see also the Supreme Court's decisions in Universities Research Association, Inc. v. Coutu, 447 U.S. 934, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981); and Middlesex County Sewerage Authority v. Sea Clammers Asso., 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).
Since no private right of action exists to enforce compliance with the regulations in question, the court finds that the plaintiffs have no standing to challenge the practices of Merrill Lynch. This action is therefore due to be dismissed.
As an alternative ground for dismissal, the court concludes that the regulation at the crux of plaintiffs' complaint, 12 C.F.R. § 1204.110, does not apply to ASCs. By its language, 12 C.F.R. § 1204.110 applies to "deposits subject to interest rate ceilings ...."
Interest rate ceilings within the meaning of regulations promulgated by DIDC are the ceilings applied to instruments such as those the DIDC was regulating in October 1980, when the regulation was promulgated. DIDC established maximum interest rates that could be paid by depository institutions. In this connection, it maintained a differential (.25 percent) between thrift institution rates and commercial bank rates. The ceiling, however, was exactly that, a ceiling much like the ceiling imposed by state usury laws. There is no interest rate ceiling established in 26 U.S.C. § 128 or elsewhere for ASCs. The interest rates payable on ASCs can go as high as the market takes the treasury bill rate (times 70 percent). Neither DIDC, nor Congress, nor any other agency, has placed an interest rate ceiling on ASCs. An ASC, while not being subject to an interest rate ceiling, is in fact subject to a fixed rate of interest. That is, on the date of issue, the interest rate for the ASC can be no more and no less than 70 percent of the present market rate of the treasury bill. Furthermore, ASCs were not in existence when § 1204.110 was promulgated. It follows that ASCs are not "deposits subject to interest rate ceilings" within the meaning of § 1204.110. Obviously, a previously enacted interest rate ceiling regulation cannot add clauses to a tax statute that Congress did not place in the statute; and 26 U.S.C. § 128 simply does not say that in computing interest paid to customers, one must add fees paid to brokers.
The purpose of § 1204.110 was not to prohibit brokers' fees on as-yet nonexistent ASCs. Rather, it was to ensure, as to instruments with interest rate ceilings, that the ceilings were not circumvented by the payment to one customer of finders' fees with respect to a second customer referred to the depository institution by the first customer. To ensure that bona fide brokers were not also affected, FHLBB promulgated the regulation (12 C.F.R. § 563.25) expressly permitting brokers to be paid commissions.
The court therefore concludes that, even if a private cause of action could be found for enforcing 12 C.F.R. § 1204.110, a brokerage fee paid on an All Savers Certificate is not governed by that regulation. Thus, the action is due to be dismissed.
The defendant asserts several other grounds for dismissing the case. These contentions include failure to join California Federal as an indispensable party, failure to exhaust administrative remedies, and lack of standing because of speculative damages. The court is of the opinion that there is no *398 need to address these contentions, since sufficient reasons have been found to support dismissal.
In conclusion, dismissal of this action is mandated for at least two alternative reasons. The regulation upon which plaintiffs' brokerage fee allegation hinges, 12 C.F.R. § 1204.110, does not govern brokerage fees on ASCs, since the ASC is not subject to an interest rate ceiling. The regulation that requires the issuance of a notice to customers, 12 C.F.R. § 1204.116, applies to the issuer of the ASC certificate, which in this case is California Federal, not Merrill Lynch.
Alternatively, even if California Federal and Merrill Lynch violated 12 C.F.R. § 1204.116, or if a brokerage fee has been paid in violation of 12 C.F.R. § 1204.110, assuming that regulation to be applicable, no private right of action can be implied in this case. Enforcement of DIDC regulations is, by statute, entrusted exclusively to the Federal Home Loan Bank Board. Federal savings and loan associations can sue and be sued by FHLBB, but one savings and loan cannot sue another savings and loan  much less a brokerage firm  to enforce compliance with DIDC regulations.
For the reasons stated herein, the court concludes that this action is due to be dismissed. A separate order has already been entered.