DIVCO CONSTRUCTION & REALTY
CORP., INC. and Charles
Weidner, Plaintiffs,

v.

MERRILL LYNCH PIERCE FENNER &
SMITH, INC., and William
Morrison, Defendants.

No. 83–1393–CIV–JLK.

United States District Court,
S.D. Florida.

Dec. 6, 1983.

Arthur R. Rosenberg, Fort Lauderdale, Fla., for plaintiffs.

Bennett Falk, Miami, Fla., for defendants.

ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS COUNTS III
THROUGH XI

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the court upon the defendants' Motion to Dismiss. The court heard oral argument on this motion on Wednesday, November 23, 1983.

In their Motion to Dismiss, the defendants state that in this action the plaintiffs assert claims under various theories of liability, all essentially predicated upon the alleged churning of a securities account by defendants. Counts I and II purport to state claims under the Securities Exchange Act of 1934, 15 U.S.C. § 78a; Counts III, IV, V, VI, VII, VIII, IX and XI purport to state claims under various state law theories; and Count X purports to state a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*

The Motion to Dismiss seeks to dismiss Counts III through XI and can be broken into two basic parts; it first challenges the RICO counts and then it challenges the pendent state law counts. In support of their motion to dismiss the pendent claims, the defendants contend that the court's jurisdiction is discretional and that the pendent claims in this suit should be dismissed to avoid confusion and prejudice in the resolution of the federal securities law claims. The defendants further contend that Count IX, for the intentional infliction of emotional distress, should be dismissed because Florida law does not recognize an independent tort for intentional infliction of mental distress. The defendants assert that even if Florida did recognize that theory of recovery, the acts alleged in this suit do not meet the appropriate standard of recovery.

In response, the plaintiffs contend that while it is within the court's discretion to dismiss the pendent state claims, the court should first consider the judicial economy of litigating both the state and federal claims before one tribunal. They further contend that there is no potential for jury confusion due to the different elements because this court is well able to instruct a jury on the distinction and differences needed for finding a violation of the federal securities laws, RICO and the state laws.

■ The court, having considered the arguments of the parties and being fully advised, finds that Counts III, IV, V, VI, VII, VIII and IX should be dismissed. Were all these counts to go to the jury, the jury would have to be instructed on divergent legal theories and relief. For the reasons stated in *Stowell v. Ted S. Finkel Inv. Serv., Inc.*, 489 F.Supp. 1209 (S.D.Fla. 1980), the court finds that this would potentially lead to confusion and, so, the court should not exercise its pendent jurisdiction over the state law claims.

■ In support of their motion to dismiss the RICO counts, the defendants state that RICO was created by Title IX of the Organized Crime Control Act of 1970 for the specific and expressed purpose of combatting organized crime and organized criminal enterprises. *Citing United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). They further argue that RICO claims are not available in the "garden variety securities fraud" disputes. In support of the proposition that the legislative history of RICO clearly defines the purpose of the act to be to "curtail—and eventually eradicate—the vast expansion of organized crimes' economic power", the defendants quote from *Wagner v. Bear Stearns & Co.*, Fed.Sec.L.Rptr. (CCH) ¶ 99,032 (N.D.Ill. Sept. 17, 1982):

> [I]t is clear that the framers of RICO did not intend the act to supplant existing federal regulations of securities fraud, at least in the absence of any alleged involvement of organized crime as that term is commonly used and understood.

> \*　　\*　　\*　　\*　　\*　　\*

Accordingly, this Court concludes that although technically within the letter of the law, *Congress did not intend that RICO encompass garden variety securities fraud, without any alleged nexus to organized crime activity,* as that term is used and understood, for which investors and others might seek ample recourse pursuant to a pervasive statutory and regulatory scheme that was in place long before Congress decided to add a new weapon to the fight against organized crime.

The defendants cite *Moss v. Morgan Stanley Inc.*, 553 F.Supp. 1347 (S.D.N.Y. 1983), for further support of that proposition, quoting from that case at 1361:

> The sweep of the statute [RICO] does not embrace ordinary violators charged in common law fraud actions or federal securities law violations as the predicate offenses for RICO relief, albeit the use thereof to accomplish one of the enumerated felonies in the statute may be an element of and lead to RICO liability if organized criminals engage in the prohibited activity.

Finally, the defendants argue that the Florida RICO Act was patterned after the Federal RICO statute and that it is to have the same limitation to cases involving organized crime. *Citing Dorsey v. State*, 402 So.2d 1178 (Fla.1981); and *Bowden v. State*, 402 So.2d 1173 (Fla.1981); and *State v. Bowen*, 413 So.2d 798 (Fla. 1st DCA 1982).

The defendants conclude that the Complaint in this action simply presents a "garden variety securities fraud" claim of churning of a securities account and that the RICO statutes were not intended to apply to these circumstances. Further, were the RICO statutes to be applied to this situation, the defendants contend that the carefully constructed framework of the federal securities laws would be swept away.

In response, the plaintiffs argue that the usual type of securities fraud claims which arise between a brokerage firm and a cus-

tomer are within the literal language of the Federal and Florida RICO statutes. The plaintiffs reject the defendant's argument that these garden variety securities fraud cases are beyond the clear intent of the RICO statutes. The plaintiffs cite *Morosani v. First National Bank of Atlanta*, 703 F.2d 1220 (11th Cir.1983), for the proposition that the Eleventh Circuit has specifically rejected arguments similar to those raised by the defendants in this case. The inference the plaintiffs urge the court to draw is that the Eleventh Circuit has rejected the argument that in order to state a claim under RICO plaintiff must allege a nexus between the defendant and the activity complained of and organized crime. However, *Morosani* does not stand for that proposition.

The district court in *Morosani* had dismissed the RICO counts from that case because the district court found that the acts alleged did not fall within the traditional definition of criminal activity. The Court of Appeals reversed the trial court because the Court of Appeals found that the acts alleged, if proved, "clearly [fell] within the traditional definition of criminal activity". The case did not deal at all with the issue now before the bar, the legislative intent of RICO.

As to the Florida RICO count, the plaintiffs agree with the defendants that if plaintiffs have stated a cause of action under the Federal RICO statute, they must have stated a claim under the Florida statute.

The tenor of the plaintiffs' argument is that the court should not be concerned with the legislative intent behind the RICO statutes. The plaintiffs appear to be of the opinion that as long as the acts complained of fit within the language of the law, the court should not be concerned with the purpose for which the statute was enacted or with the fact that such a strait forward application of the law might eviscerate other federal statutes, such as the Securities and Exchange Act.

The Court, having considered the arguments of the parties and being fully advised, finds that the defendants' motion to dismiss is well founded and should be granted. It is beyond question that the RICO statutes were enacted in an attempt to control organized crime:

> It is the purpose of this Act [RICO] to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those *engaged in organized crime.*

*Congressional Statement of Findings and Purpose, reprinted in* 18 U.S.C. § 1961, at 211 (Supp.1983). (emphasis added).

The legislature stated that the Act should be "liberally construed to effectuate its remedial purposes." *id.* But that statement was only a recognition of the serpentine nature of organized crime. Congress realized that it was a difficult task to identify any universal traits of organized crime and that if the legislation was to be effective in opposing organized crime it must be given liberal construction so as to match the criminals' winding and turning from one enterprise and activity to another. The Congress had no intention of enacting a new substantive securities law.

To protect against securities fraud, the Congress had previously enacted the Securities and Exchange Act. The thrust of RICO was to supplement other legislation in those cases where there was an involvement with organized crime. It was the added element of organized criminals attempting to move into legitimate business enterprises that caused the need for additional legislation.

The plaintiff here would have the court interpret RICO to apply even in situations where there was absolutely no hint of organized criminal activity. In fact, the plaintiff makes no allegation that the defendants in this action are involved in organized crime. The court simply cannot take upon itself the authority to expand legislation beyond its stated and unquestioned purpose. If it is Congress' intent

that victims of simple securities fraud should be entitled to the increased remedies and protections provided in RICO then Congress may do that by amending the Securities Exchange Act or by some other clear expression. Unless or until the Congress so acts, the courts should be content to interpret and apply the law as the legislative history shows it was intended to be interpreted and applied. Because the plaintiffs are unable to muster an allegation of involvement of organized crime, the RICO counts must be dismissed.

Accordingly, the court does:

ORDER and ADJUDGE that the defendant's Motion be and it is GRANTED. The state law counts, Counts III, IV, V, VI, VII, VIII and IX, are DISMISSED without prejudice to refile them in state court. The RICO counts, Counts X and XI, are DISMISSED with prejudice.