**Dale R. SERIG and D.R. Serig & Company, an Illinois Corporation, Plaintiffs,**

**v.**

**SOUTH COOK COUNTY SERVICE CORPORATION, Lansing Federal Savings & Loan Association, the First National Bank of Lansing, Not Individually, But Solely as Trustee Under Trust Agreement Dated April 10, 1979 and Known as Trust No. 2994, Frank Trichak, Barbara Fuehrmeyer, Jacob S. McClain, Robert A. Bergren, Norman W. Schultz, Lyle A. Kooy, Charles Koselke, Clarice Fazio, Richard Hook, and Joseph Chelbana, Defendants.**

No. 82 C 5300.

United States District Court, N.D. Illinois, E.D.

March 2, 1984.

agencies. *Id.*

Richard J. Nakon, Palatine, Ill., for plaintiffs.

Law Offices of Frederick S. Stein, Chicago, Ill., Armand E. Capanna, Lillig, Kemp & Thorsness, Oak Brook, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This matter is before the court on defendants' motion to dismiss. The plaintiffs, Dale R. Serig and D.R. Serig & Company, sued defendants, South Cook County Services Corp., Lansing Federal Savings & Loan Association, et al., because of a dispute that arose in connection with a joint venture agreement for the purchase and development of certain real estate. Jurisdiction is predicated on 28 U.S.C. § 1337, which grants jurisdiction to district courts over any civil actions arising under congressional acts regulating commerce and the doctrine of pendent jurisdiction.

The complaint consists of nine counts. Only Counts IV and V involve federal claims, and if these claims cannot withstand defendant's motion to dismiss, pendent jurisdiction over the related state claims is also lacking. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### RICO Count

Turning first to Count IV, plaintiffs allege a claim under 18 U.S.C. §§ 1961–1968, the Racketeer Influence and Corrupt Organization Statute (RICO). An essential element of a RICO claim is a violation of 18 U.S.C. § 1962. Section 1962 requires proof of the following six factors:

1) that a person
2) through a pattern
3) of racketeering activity or collection of an unlawful debt
4) directly or indirectly
   (a) invests in or
   (b) maintains an interest in, or
   (c) participates in
5) an enterprise;
6) the activities of which affect interstate commerce.

The third requirement, "racketeering activity", is defined in 18 U.S.C. § 1961 and includes a violation of 18 U.S.C. § 1341, the federal mail fraud statute.

In the instant case, plaintiff alleges a RICO violation by reason of violations of 18 U.S.C. § 1341, the federal mail fraud statute. The mail fraud statute prohibits

any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article ... by use of the Postal Service.

Thus, the mail fraud statute prohibits "any" fraud conducted through the Postal Service. The defendant claims that the plaintiffs' allegations of the underlying mail fraud, the racketeering activity, have not been pled with sufficient particularity under Rule 9(b) and therefore plaintiffs' RICO claim should be dismissed.

In judging the technical sufficiency of a RICO claim based upon mail fraud, the recent 7th Circuit case of *Schacht v. Brown,* 711 F.2d 1343 (7th Cir.1983) is instructive because the *Schacht* case also involved a challenge to the sufficiency of the fraud allegations of a RICO claim based upon mail fraud. In *Schacht,* the Director of Insurance for Illinois brought a RICO claim against the directors of an Illinois insurance company. *Schacht* involved a scheme whereby the company's directors allegedly concealed the company's continuing liability for certain insurance risks in order to settle an investigation of the company by the Illinois Department of Insurance. The investigation concerned the insurance company's potential insolvency. The plaintiff alleged that the underlying racketeering activity, i.e., the mail fraud, consisted of the mailing of fraudulent financial statements which all defendants knew did not disclose the insurance company's insolvency or the purpose and effects of certain agreements which enabled the company to report a lower liability-to-surplus ratio.

The *Schacht* defendants sought dismissal of the RICO claim, contending that the fraud alleged was not compensable under

RICO. The defendants contended, *inter alia*, that the acts of business fraud which the plaintiff had alleged did not state a violation of § 1962 of RICO and therefore the court lacked jurisdiction over the case.

In deciding this question, the Seventh Circuit was guided by the liberal pleading policy of the federal rules. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Murphy v. White Hen Pantry Co.*, 691 F.2d 350 (7th Cir.1982). The court therefore looked, not to the technical precision of the allegations, but to the complaint's full factual allegations. Despite technical insufficiencies in summary portions of the complaint, the court found that the full face of the complaint adequately described acts of business fraud. The court found that the allegation that "the mailing of the fraudulent financial statements of Reserve [the insurance company] which all defendants knew did not disclose Reserve's insolvency or the purpose and effects of the SCOR deal" sufficiently alleged the underlying pattern of racketeering activity. *Id.* 711 F.2d at 1351. The court further found that these allegations of business fraud sufficiently stated a predicate racketeering activity upon which a RICO claim could be based. The court noted that Congress could avoid RICO's application to "garden variety" fraud claims by removing mail and securities fraud from the list of racketeering activities. *Id.* 711 F.2d at 1356. Thus, the court refused to dismiss the RICO claim.

■ Applying the liberal pleading analysis of *Schacht* to the circumstances of the instant case, this court finds plaintiffs' allegations in the instant case do not sufficiently allege an underlying racketeering activity to support a RICO claim. In fact, plaintiff's allegations do not allege any "garden variety" fraud upon which to predicate a RICO claim. Reading the complaint as a whole, Serig alleges that the joint venture agreement was for the purpose of purchasing, annexing, rezoning and single

family land development of certain property, at Crete, Illinois, known as the Lincolnshire Green Joint Venture. ("Venture"). The Venture was required to buy certain property from Serig and had an option to purchase additional property. Defendant South was to furnish all capital required to finance the Venture, without the benefit of any guarantees or purchases of lots by Serig. However, when defendant South was unable to obtain necessary financing, Serig and South amended their agreement. The amendment provided that Serig would purchase certain lots and obtain a mortgage from Lansing Federal Savings & Loan Association,[1] also a defendant, and the defendant South would make all payments on the mortgage, until the lots were resold.

Serig alleges that South subsequently failed to provide funds necessary to market homesites in the Venture, as it had agreed to, and also failed to exercise its option to buy additional property under the agreement. The parties then amended their agreement again, whereby South exercised its option to purchase some of the Venture property, making payment in two installments. Moreover, South agreed to assume and satisfy the existing mortgage loan to Lansing within a specified time. Serig agreed to guaranty a portion of the loan. South subsequently refused to satisfy this mortgage and failed to further perform its obligations under the Venture Agreement.

Serig's RICO claim essentially builds upon this basis of alleged facts. Incorporating the aforementioned allegations, the RICO count alleges that defendant South was incorporated by Lansing Savings and Loan to perform functions that Lansing, as a federally chartered savings and loan could not do. The complaint further alleges that South and Lansing made "numerous untrue statements of material facts," (Complaint-Count III ¶ 16) including, but not limited to, a statement made by defendant Kooy, an officer and director of South

---

1. Lansing Federal Savings & Loan Association has been merged into First Savings and Loan Association of Hegewisch, and the latter was thus substituted as a defendant in lieu of Lansing.

and Lansing, that although South was a party to the Venture Agreement, Lansing would be responsible for all funding and Lansing would perform all of South's obligations under the Agreement. Plaintiff further alleges, on information and belief, that Kooy advised other defendant officers and directors of Lansing and/or South and these defendants "approved and ratified Lansing's undertaking of South's obligations pursuant to the Agreements." (Count III ¶ 17(a)(c)). From these statements plaintiff further alleges that all the defendants conspired "as part of a scheme to defraud plaintiffs of their property, services and labor with respect to the Venture." (Count III ¶ 25). As a result of the conspiracy, plaintiffs claim they are now without title to some of the Venture property, having mortgaged it to Lansing and have incurred debts which have not been repaid as agreed. (Count III ¶ 27).

■ Plaintiffs attempt to build these claims into a RICO count by alleging, on information and belief only, that the mailing of four letters from various officers of Lansing, three to Serig and one to a Robert Hoover, constituted the predicate acts of mail fraud upon which the RICO violation rests. The contents of the letters are not disclosed.[2] Plaintiffs' complaint states the conclusion that these letters, joint venture agreements and other documents "which related directly to Defendant's attempt to deceive and defraud the plaintiffs by misleading the Plaintiffs into believing they had a joint venture agreement which at all times would be funded by and all payments made through the defendant, Lansing." (Complaint-Count IV ¶ 38). Plaintiff further concludes that the acts, statements and representations of defendants "were made and committed for the purpose of inducing plaintiffs to act in reliance upon them, and plaintiffs did rely upon them,

suffering the damages described above as a result." (Complaint-Count VIII ¶ 32).

■ Such allegations do not sufficiently allege the underlying mail fraud—the necessary racketeering activity—even under the most liberal pleading policy guidelines outlined in *Schacht*. The mail fraud statute prohibits acts made criminal by state or federal law and "any plan, consummated by the use of the mails, in which artifice or deceit is employed to obtain something of value with the intention of depriving the owner of the property." *United States v. Kreimer*, 609 F.2d 126, 128 (5th Cir.1980). However, the mail fraud statute does not "taint every breach of a business contract." *Id.* at 128. The statute only condemns acts that are planned or calculated to deceive. *Id.* Accord *United States v. Bush*, 522 F.2d 641, 649 (7th Cir.1975), *cert. denied*, 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976). Moreover, under Illinois law,[3] allegations that a party failed to perform a promise are not sufficient to constitute fraud. *E.g.*, *Bank of Lincolnwood v. Comdisco, Inc.*, 111 Ill.App.3d 822, 67 Ill.Dec. 421, 444 N.E.2d 657 (1982). Under Illinois law, a promise to perform an act, though accompanied at the time with an intention not to perform it, is not such a false representation as will constitute fraud. *Id.* The only exception to this rule is where a false promise or representation of future conduct is alleged to be part of a scheme employed to accomplish the fraud. *Id.* But in such cases, sufficient facts must be alleged from which the scheme can be inferred. *Id.* In the instant case, there are no allegations that the promises were made with knowledge at the time that the promises were false.

■ Theories of fraud, moreover, must be measured against Rule 9(b) of the Fed. R.Civ.P. Rule 9(b) requires that the circumstances constituting fraud be stated with

---

2. Allegations of fraud like those involved here, when made on information and belief, must be accompanied by a statement of the facts upon which the belief is founded. *Duane v. Altenburg*, 297 F.2d 515 (7th Cir.1962).

3. Since the alleged events all occurred in Illinois, this court must look to the law of Illinois in determining the adequacy of plaintiffs' RICO claim.

particularity; that matters such as the time, the place, the contents of the false representations be stated. Although not stated by plaintiffs' in their complaint, the only apparent potential for a fraud claim rests upon statements made in letters which defendants allegedly knew were false. If this is plaintiffs' theory, plaintiffs must set out the contents of the letters and specify in what respect each of the statements were false and misleading, and the factual basis for believing that the defendants acted with an intent to defraud. *E.g., Gross v. Diversified Mortgage Investors*, 438 F.Supp. 190 (S.D.N.Y.1977); *see* 5 Wright and Miller, Federal Practice and Procedure § 1297 & n. 54 (1969 & Supp. 1983).

■ However, in the instant case, the most that can be drawn from plaintiffs' allegations is a claim for breach of contract—defendants did not provide the money though they promised they would. Mere breach of business contract disputes do not provide a basis for a RICO suit. Such allegations do not state a violation of the mail fraud statute under state or federal law upon which plaintiffs can predicate their RICO claim. Even under the liberal pleading policy outlined in *Schacht*, plaintiffs' allegations are insufficient. Moreover, plaintiffs have failed to allege what is the enterprise and how the activities of that enterprise are engaged in or affect interstate commerce, essential elements to any RICO claim. *See United States v. Rone*, 598 F.2d 564, *cert. denied*, 455 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (9th Cir.1979). Since plaintiffs have failed to allege a federal or state law fraud upon which to base their RICO claim or identify the enterprise and how it affected interstate commerce, Count IV of the complaint is dismissed.

### HOLA COUNT

Turning to Count V, plaintiffs' other federal claim, the complaint alleges that de-

fendants breached fiduciary duties by violating 12 U.S.C. § 1461 et seq., the Homeowner's Loan Act of 1933 ("HOLA"). HOLA provides a comprehensive scheme for regulation of federal savings and loan associations by the Federal Home Loan Bank Board ("Board"). Section 1464(d) provides for enforcement of HOLA and regulations promulgated thereunder by the Board. Defendant contends that no private right of action is implied under HOLA, and therefore Count V must also be dismissed.

Although courts have not uniformly agreed that HOLA implies a private right of action,[4] the Seventh Circuit has recently indicated that a private plaintiff may seek judicial enforcement of federal common law rights implied under HOLA. *Barany v. Buller*, 670 F.2d 726 (7th Cir.1982). However, courts have permitted such private enforcement only after the plaintiff has exhausted his administrative remedies with the Board. *Milberg v. Lawrence Cedarhurst Federal Savings and Loan Association*, 496 F.2d 523 (2d Cir.1974); *Murphy v. Colonial Federal Savings and Loan Association*, 388 F.2d 609, 614–25 (7th Cir.1967). Although the issue of whether exhaustion is required prior to seeking judicial relief has not been definitely resolved, *People of the State of Illinois v. Home Federal Savings and Loan Association*, 521 F.2d 704 (7th Cir.1975), the Seventh Circuit has indicated that exhaustion of administrative remedies is proper before judicial relief is sought. *Goldman v. First Federal Savings and Loan Association of Wilmette*, 518 F.2d 1247, 1250 n. 6 (7th Cir.1975); *see also Mortenson v. First Federal Savings & Loan Association*, 79 F.R.D. 603 (D.N.J.1978).

It appears from plaintiff's complaint that all acts that plaintiffs complain of fall within HOLA regulations and the enforcement

---

**4.** In *Goldman v. First Federal Savings and Loan Association of Wilmette*, 518 F.2d 1247, 1250 n. 6 (7th Cir.1975), Judge Stevens noted that in light of recent Supreme Court decisions "it is perhaps arguable that no private cause of action can be

implied [under HOLA]." In *Home Federal Savings and Loan Association of the South v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 525 F.Supp. 393 (N.D.Ala.1981), the court also reached that conclusion.

power of the Board. Plaintiff, in fact, admits that "substantially all of the breaches of fiduciary duty alleged by plaintiff have been disclosed as a result of an investigation and report made by the Board in 1976. (See Exhibit to Plaintiffs' Response.)" (Plaintiffs' Response to Motion to Dismiss Amended Complaint at Page 19). Plaintiff argues that it need not bring the similar breaches alleged in Count V before the Board since the Board's report indicated that it knew of the violations but failed, to plaintiffs' knowledge, to assert any of its regulatory or enforcement powers under HOLA.

Examination of the entire case file in the instant case, including "Exhibits to Plaintiffs' Response," reveals only one Federal Home Loan Bank Board Report, dated April 14, 1976. (See attached to Plaintiffs' Response to Motion to Dismiss Complaint.) This report is subject to a protective order, entered in the case of *Lansing Federal Savings and Loan Association v. St. Paul Fire & Marine Insurance*, No. 78 C 4870 (N.D.Ill.1980). Since the Board report covers investigations made three years prior to any relationship between plaintiffs and Lansing, such report cannot satisfy the Board review required before judicial review of alleged HOLA violations proceeds. Normally, under such circumstances, the action is stayed, pending administrative determination by the Board. *Murphy v. Colonial Federal Savings and Loan Association*, 388 F.2d 609 (2d Cir.1967).

■■■ However, in the instant case, plaintiffs' HOLA count alleges that

> individual directors and officers of Lansing have from time to time violated their fiduciary duties under the Rules and Regulations promulgated by the Board pursuant to the Homeowners Loan Act....

(Count V, par. 6). Plaintiffs pray for an accounting, injunctive relief and compensatory and exemplary damages. As it presently stands, the entire HOLA count is aimed at the officers and directors of Lansing. On February 22, 1983, after the filing of plaintiffs' First Amended Complaint, this court granted leave to substitute First Savings and Loan Association of Hegewisch as defendant, in lieu of Lansing Federal Savings and Loan Association. (See note 1, *supra*). Thus, absent an allegation that the officers and directors of Lansing succeeded to positions at Hegewisch, the plaintiffs HOLA count is simply moot to the extent it seeks injunctive relief. 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3533 (1975). Although a damage claim will survive a mootness conclusion, the plaintiffs' complaint does not state a viable claim for damages based on HOLA violations. Plaintiffs apparently bring their HOLA claim as depositors of Lansing. Yet plaintiffs fail to allege that they were damaged as individual depositors by any of the alleged HOLA violations. Alternatively, plaintiffs fail to allege that they seek to maintain their HOLA claim under Rule 23 of the Federal Rules of Civil Procedure as class representatives. Under these circumstances, plaintiffs HOLA count must also be dismissed. *See Goldman v. First Federal Savings and Loan Association of Wilmette*, 521 F.2d 704 (7th Cir.1975). Therefore, proceedings related to Count V and the pendent state claims are dismissed.

### *Conclusion*

For the reasons stated in the foregoing opinion, Count IV Count V and all of the pendent state claims are dismissed. Plaintiff is hereby granted leave to file a Second Amended Complaint within 28 days hereof.