**Angela F. DOXIE and all other persons similarly situated, Plaintiffs,[1]**

v.

**FORD MOTOR CREDIT COMPANY, Defendant.**

**Civ. A. No. CV184–36.**

United States District Court, S.D. Georgia, Augusta Division.

Oct. 18, 1984.

---

1. Plaintiff styled her complaint as a class action

and filed a "motion for order determining ac-

tion maintainable as class action" with her complaint. Defendant opposed the motion for class certification. The Court has deferred ruling upon the motion pending resolution of the motion to dismiss. Because of the holding of the Court on the motion to dismiss, the Court need not reach the class action question. For a discussion of the issue of class certification in RICO cases, see *Wilcox Development Co. v. First Interstate Bank,* 97 F.R.D. 440 (D.Or.1983).

John B. Long, Augusta, Ga., for plaintiffs.

John H. Fleming, Sutherland, Asbill & Brennan, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION AND ORDER

BOWEN, District Judge.

This case is another in the rapidly multiplying number of cases involving "private civil RICO"—the private right of action found in the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1982). Before the Court is defendant's motion to dismiss and motion to dismiss the amended complaint.

For purposes of ruling upon the motions to dismiss, the Court accepts plaintiff's allegations as true. *See, e.g., Guerrero v. Katzen,* 571 F.Supp. 714, 716 (D.D.C.1983). The plaintiff, Angela F. Doxie, purchased a used 1979 Ford LTD automobile on November 4, 1981, from Bob Beard Ford, a Ford dealership. In addition to an initial down payment, Doxie agreed to pay $160.99 per month. In connection with the purchase and financing of the automobile, Doxie signed a retail installment contract on forms that the defendant, Ford Motor Credit Company (Ford Credit) had provided to the automobile dealer. The dealer assigned the contract to Ford Credit.

The contract, a copy of which is attached to the complaint, requires insurance coverage for the automobile that Doxie purchased:

> The Buyer will insure the Buyer and the Creditor against loss or damage to the Vehicle. The type and amount must be acceptable to the Creditor. The Creditor may buy the insurance if the Buyer does not, but the Creditor does not have to do so. If the Creditor buys the insurance, the Creditor may insure only the Creditor or both the Creditor and the Buyer. In either case, the Buyer must pay back to the Creditor what the Creditor pays for the insurance plus interest at the highest rate allowed by law. If the Creditor insures only the Creditor, the Buyer will not have insurance.

Subsequent to entering the contract, Doxie maintained insurance on the LTD, protecting the interests of herself and Ford Credit against loss, damage, or destruction to the automobile. Sometime during June of 1982, however, Doxie's insurance policy lapsed.

Consequently, Ford Credit purchased a policy, a copy of which is also attached to the complaint, to provide insurance coverage for the automobile. As stated in the insurance agreement, it provided "limited insurance protection to the Debtor, as well as to the insured Creditor." As also stated in the agreement, the insurance provided for Doxie only "limited physical damage coverage" not to exceed the least of either the cost of repair or replacement of the automobile less the deductible; or, the unpaid balance Doxie owed to Ford Credit less the amounts of unearned finance charges, unearned insurance premiums, and the deductible; or, "the actual cash value" of the automobile "immediately prior to the peril occurrence."

Plaintiff alleges that Ford Credit purchased the insurance pursuant to an agreement with American Security Insurance Company or American Security Insurance Group. The agreement allegedly provided that Ford Credit would make commissions on profits from the sale of such insurance. American Security retained only a small percentage of the insurance premium, and Ford Credit "received the balance less losses assessed against the aggregate remaining premiums collected from" Doxie and others like her. (Complaint, para. 8).

Under the "scheme" between Ford Credit and American Security, "it was to the economic advantage of Ford Credit to charge as high a premium as possible." (Complaint, para. 9). The total cost of the insurance with finance charges was $913.63. After purchasing the insurance, Ford Credit notified Doxie through the

United States mail that her monthly payments were being increased by $35.13 per month, for a total monthly payment of $196.12. In October of 1983, Doxie purchased her own replacement property insurance policy; the property damage premium for twelve months was only $136.00. When Ford Credit canceled the policy it had purchased, it computed the rebate of the unearned premium by the Rule of 78's rather than the pro rata method of Ga.Code Ann. § 33–24–44(c).

Thus, Ford Credit charged Doxie over $716.00 of premium and interest for sixteen months coverage.[2] After Doxie had again provided her own insurance, Ford Credit informed her that her monthly payment for the remainder of the contract would be $183.00.

According to Ford Credit's figures, Doxie has paid $386.43 toward the cost charged her for the insurance that Ford Credit purchased. Ford Credit contends that Doxie owes an additional $330.43.

The heart of plaintiff's attempt to allege a civil racketeering claim is in paragraphs 17 through 19 of the complaint:

17. By attempting to collect commissions and profits from the sale of this insurance by the use of the mail, Defendant, in connection with the named Plaintiff and in connection with all other persons similarly situated, has sent false and fraudulent statements through the mail, has engaged in a scheme to obtain money by means of false or fraudulent pretenses and representations, and has violated the provisions of 18 U.S.C. § 1341.

18. By sending such false and fraudulent statements through the mail and by attempting to collect from the named Plaintiff and all those individuals similarly situated, Defendant has engaged in a racketeering activity relating to mail fraud as defined in 18 U.S.C. § 1961.

19. Defendant, Ford Motor Credit Company, has engaged in a pattern of racketeering activity of the type alleged in this Complaint in that Defendant, Ford

Motor Credit Company, has similarly forced property damage insurance upon other customers, has used the mails to collect the costs of such insurance and has made a profit from the sale of such insurance in violation of the provisions of [Ga.Code Ann.] §§ 10–6–24, 10–6–25 and 10–6–31 [(1982)].

In paragraph 20 of the complaint, plaintiff seeks "judgment against Defendant, Ford Motor Credit Company, in an amount equal to three times the amount of profit made by Defendant, Ford Motor Credit Company, from the sale of said policies of insurance, as authorized by 18 U.S.C. § 1964(c), all costs of this action, together with reasonable attorney's fees."

■■■ Defendant moves to dismiss based in part upon an argument that the complaint's allegations of fraud are incomplete under Fed.R.Civ.P. 9(b) and the RICO statute. I agree. *See, e.g., Friedlander v. Nims,* 571 F.Supp. 1188, 1194 (N.D.Ga. 1983). If a plaintiff files a civil suit under RICO and, as in this case, relies upon mail fraud as the alleged racketeering activity, the complaint must be pleaded with particularity. *Barker v. Underwriters at Lloyd's, London,* 564 F.Supp. 352, 356 (E.D.Mich. 1983). *See also Serig v. South Cook County Service Corp.,* 581 F.Supp. 575 (N.D.Ill.1984); *County of Cook v. Midcon Corp.,* 574 F.Supp. 902, 920–922 (N.D.Ill. 1983); *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 567 F.Supp. 1146, 1156 (D.N.J.1983); *King v. Lasher,* 572 F.Supp. 1377, 1383 (S.D.N.Y. 1983); *Eaby v. Richmond,* 561 F.Supp. 131 (E.D.Pa.1983). In order to allege mail fraud, Doxie must state such matters as the time, place, and contents of the purported false representations. Additionally, she must "specify in what respect each of the statements were false and misleading, and the factual basis for believing that the defendant acted with an intent to defraud." *Serig,* 581 F.Supp. at 580.

Plaintiff in this case is subject not only to the specificity requirements of Fed.R.

---

**2.** Compare Complaint, ¶ 15 ($716.35) with Complaint, ¶ 21 ($716.86).

Civ.P. 9(b), but also to the special pleading requirements of the RICO statute. Even courts that have broadly construed the standing requirement of 18 U.S.C. § 1964(c) have insisted upon strict adherence to the technical requirements for a civil RICO claim because the statute is a relatively specific one. *Ralston v. Capper*, 569 F.Supp. 1575, 1581 (E.D.Mich.1983). "In face of the difficulties courts have had in interpreting the provisions of RICO, and also in face of the treble damage liability which defendants are subject to, it is imperative that the court and the defendants be placed on clear notice as to what is being alleged, and what the substance of the claim is, in order to facilitate a decision on the merits of the case." *Id.* At least one court in this circuit has previously ruled that RICO claims must be pled with particularity. *Taylor v. Bear, Stearns & Co.*, 572 F.Supp. 667, 682–683 (N.D.Ga.1983). *See also Bache, Halsey, Stuart, Shields, Inc. v. Tracy Collins Bank & Trust Co.*, 558 F.Supp. 1042, 1045–47 (D.Utah 1983). Whereas the complaint does not meet the especial pleading requirements of RICO and Fed.R.Civ.P. 9(b), the complaint, as to the federal RICO claim, must be dismissed.

 Defendant also argues that the complaint should be dismissed because it fails to state a claim upon which relief can be granted under the RICO statute, in that plaintiff has failed to allege the injury needed to bring a RICO civil action under 18 U.S.C. § 1964(c). Again, I agree with defendant's argument. This Court holds in accord with a growing weight of authority that requires plaintiffs in civil RICO cases to "allege injury caused by an activity which RICO was designed to deter, which whatever it may be, is different from that caused simply by such predicate acts as are alleged here." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, No. 741 F.2d 482, 494 (2d Cir. 1984). In other words, "a civil RICO complaint must allege 'a distinct RICO injury,' ... [an] injury caused by a RICO violation, not just one caused by some of the essen-

tial elements of a RICO violation." *Bankers Trust Co. v. Rhoades*, 741 F.2d 511, 516 (2d Cir. July 26, 1984). *Compare Morosani v. First National Bank of Atlanta*, 581 F.Supp. 945 (N.D.Ga.1984); *Friedlander*, 571 F.Supp. at 1194; and *Wilkinson v. Paine, Webber, Jackson & Curtis, Inc.*, 585 F.Supp. 23, 28–29 (N.D.Ga.1983).

The Eleventh Circuit decision in the case of *Morosani v. First National Bank of Atlanta*, 703 F.2d 1220 (11th Cir.1983) is not to the contrary. The *Morosani* decision stands only for the proposition that "the relevant nature of 'criminality' [of the RICO predicate offenses] is not strictly limited by what has traditionally been prosecuted." *Friedlander*, 571 F.Supp. at 1194 n. 3. *See also Divco Construction & Realty Corp. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 575 F.Supp. 712, 714 (S.D. Fla.1983).

I will not labor the issue with lengthy recitations of the history of the RICO statute or with an academic attempt to state the elusive meaning of the term "racketeering injury." The case books are already replete with such efforts. What this order should make clear, however, is that I have concluded that Congress did not intend to federalize every tort or breach of contract in business transactions involving the use of the mails.[3] *See* Tarlow, *RICO Revisited*, 17 Ga.L.Rev. 291, 304 (1983).

 In addition to the Federal RICO claim, plaintiff has raised several state claims based upon pendent and diversity jurisdiction. Plaintiff seeks civil remedies under the Georgia Racketeer Influenced and Corrupt Organizations Act. Ga.Code Ann. § 16–14–6 (1984). The Georgia General Assembly was specific in stating the limitations of the Georgia RICO Act: "The General Assembly declares that the intent of this chapter is to impose sanctions against [the] subversion of the economy by organized criminal elements .... This chapter shall be construed to further that intent." Ga.Code Ann. § 16–14–2(b). Even accepting plaintiff's allegations as

---

3. When reading the RICO statute, one would do well to remember the words of a recent presidential candidate: "When you take the text out of context, the result is a pretext."

true, I cannot find and conclude that Ford Credit is a member of the "organized criminal elements" at which the Georgia RICO Act is aimed.

■ In Count Two of plaintiff's amended complaint, plaintiff asserts that a "confidential relationship" existed between herself and Ford Credit and that Ford Credit breached its ensuing obligation to perform the contract in good faith. "Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another...." Ga.Code Ann. § 23-2-58 (1982). The contract between Ford Credit and plaintiff did not create a confidential relationship between them, nor was Ford Credit "so situated as to exercise a controlling influence over the will, conduct, and interest" of plaintiff. *Id.* "The mere fact that one reposes trust and confidence in another does not create a confidential relationship. 'In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone.'" *Lewis v. Alderman,* 117 Ga.App. 855, 162 S.E.2d 440, 441 (1968), *quoting, Dover v. Burns,* 186 Ga. 19, 26, 196 S.E. 785, 789 (1938). Although factual situations are conceivable in which a person purchasing an automobile could have a confidential relationship, within the meaning of Ga.Code Ann. § 23-2-58, with the corporation financing the purchase, in the usual setting, such as in this case, the purchaser of an automobile has no confidential relationship with the financer of the purchase.

■ In Count Four of her amended complaint, plaintiff alleges that Ford Credit "wilfully and wrongfully converted money owed" to the plaintiff. No claim for conversion can properly be asserted against Ford Credit. " '[I]f the owner expressly or impliedly assents to or ratifies the taking, use, or disposition of [her] property, [s]he cannot recover as for a conversion thereof; and this is true although defendant exceeded the power given him.' " *Birkett L. Williams Co. v. Smith,* 353 F.2d 60, 64 (5th Cir.1965).

■ In Count Five, plaintiff raises a claim for money had and received. An express contract governs the rights of the parties in this case, and an action based on an implied contract theory such as money had and received cannot be maintained. *Wofac Corp. v. Hanson,* 131 Ga.App. 725, 206 S.E.2d 614 (1974).

In conclusion, for the above stated reasons, the Court orders the complaint DISMISSED without prejudice. The Court will allow plaintiff twenty (20) days from the date of this order to amend her complaint, if she can, in accord with this order. If a second amended complaint is not filed within twenty (20) days of the date of this order, the Court will order the case DISMISSED with prejudice.