**Leo ZURKOWSKY, Plaintiff,**

v.

**GOVERNMENT DEVELOPMENT BANK FOR P.R. (GDB), et al, Defendants.**

**Civ. No. 85–0162(PG).**

United States District Court, D. Puerto Rico.

Aug. 30, 1985.

Leo Zurkowsky, pro se.

Roberto E. García Torres, San Juan, P.R., Antonio Hernandez, William Beckerleg & Enrique S. Lamoutte, Fco. Besosa, Asst. U.S. Atty., Hato Rey, P.R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

The present case and other related cases filed by the same plaintiff, Mr. Leo Zurkowsky,[1] arise as a result of an order entered by U.S. Bankruptcy Judge W.H. Beckerleg denying debtor, El Palmar Hotel Corporation's petition for conversion of the proceedings from a Chapter 7 to a Chapter 11 pursuant to Title 11 U.S.C. § 706(a). The bankruptcy judge's order was appealed to the U.S. District Court by Mr. Zurkowsky on February 27, 1983. U.S. District Judge Raymond Acosta, in an opinion and order entered on April 28, 1983, affirmed the bankruptcy judge's order. Judge Acosta further denied Zurkowsky's request that

the hearing to confirm the sale of real and personal property of the estate be stayed pending his appeal to the Court of Appeals. Mr. Zurkowsky filed an appeal from Judge Acosta's opinion and order of April 28, 1983. The First Circuit Court of Appeals, in an order entered on November 22, 1983, affirmed the same.

On January 23, 1985, in a desperate effort to revive a corpse (the El Palmar Hotel), Mr. Leo Zurkowsky filed a *pro se* complaint against the Government Development Bank for Puerto Rico (GDB); Honorable William Beckerleg and Honorable Antonio Hernández, U.S. Bankruptcy Judges; Enrique S. Lamoutte, then Clerk for the U.S. Bankruptcy Court; Luis Guasch, Trustee; Rodrigo Otero Suro, Esquire, attorney for the trustee; Roberto Garcia Torres, Esquire, attorney for GDB; Ernesto Maldonado Pérez, Esquire, attorney for debtor in bankruptcy case; Carlos Santos Correa, Esquire, attorney for Surfside Corporation; Surfside Corporation; Antonio Santana and Willie Santana, stockholders of Surfside Corporation; Julio Pietrantoni Blasini, Esquire, President of GDB; Augusto González Boothby, Senior Executive-President for GDB; and M. López Silva, Esquire, officer for GDB. Plaintiff alleges that the defendants conspired to maliciously and willfully defraud the debtor of his rights in law and property.

A hearing was held on July 19, 1985, as to the various motions filed by both plaintiff and defendants. The principal matter discussed was whether the Court has subject matter jurisdiction to entertain this case because if no jurisdiction was found to exist the other motions filed by both plaintiff and defendants do not have to be considered.

Jurisdiction is predicated under the 1984 Federal Judgeship Act, 28 U.S.C. § 157(d) and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(a). Mr. Zurkowsky contends that the Federal Judgeship Act of 1984 requires this Court

---

1. Mr. Zurkowsky is controlling shareholder of debtor, El Palmar Hotel Corporation.

to withdraw the proceedings from the Bankruptcy Court.

Title I of the Bankruptcy Amendments begins by amending the statutory provision granting bankruptcy jurisdiction to district courts. 28 U.S.C. § 1334, now provides in part:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

28 U.S.C. §§ 157–158 sets forth the various matters which may be heard by the Article I courts and judges and the mechanisms for review of those decisions by Article III district court judges. Section 157(a) provides generally:

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

The remainder of section 157 sets a relationship between the bankruptcy court and district court depending on whether there is involved "core proceedings" arising under the Bankruptcy Code or "non-core proceedings" related to a title 11 case. Section 157(d) permits the district court to withdraw either core or non-core proceedings from the bankruptcy court on its own motion or upon motion by a party and sets forth circumstances under which such a withdrawal is compelled. The provision states:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or timely motion of any party, for cause shown. The district court shall on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. 28 U.S.C. § 157(d).

The appropriate reading to be given to Section 157(d) according to a Senate Report quoted in *In Re White Motor Corp.*, 42 B.R. 693, 700 (D.C.1984), is that:

recall by the district court is generally discretionary, except that recall is mandatory in two instances—in any proceeding involving a claim or cause of action which is not one arising under title 11; and (2) in any proceeding where the district court determines that Federal laws regulating organizations or activities affecting interstate commerce are involved—the Committee intends that this second instance of mandatory recall be reconstructed narrowly—basically to cover only those organizations or activities which immediately and directly affect interstate commerce.

In a colloquy during the House debate on the final version of Section 157(d) quoted in *In Re White Motor Corp.*, to the question of what kind of situations or circumstances are covered by the language "activities affecting interstate commerce," the answer was:

This language is to be construed narrowly. It would, for example, mean related cases which may require consideration of both title 11 issues and other Federal laws including cases involving the National Labor Relations Act, civil rights laws, Securities and Exchange Act of 1934, and similar laws. 130 Cong.Rec.H. 1849–50 (daily ed. March 21, 1984).

Similarly, in a Senate debate Senator De Concini offered a narrow reading of Section 157(d):

This provision concerns mandatory withdrawal of proceedings from the bankruptcy judge where the district court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affect-

ing interstate commerce. The district court should withdraw such proceedings only if the court determines that the assertion that other laws regulating organizations or activities affecting interstate commerce are in fact likely to be considered, and should not allow a party to use this provision to require withdrawal where such laws are not material to resolution of the proceeding. The district court should refuse withdrawal if withdrawal whould unduly delay administration of the case, considering the status of the case, the importance of the proceeding to the case and the relative case loads of the district court and bankruptcy judge.

130 Cong.Rec. S 6081 (daily ed. June 19, 1984).

Mr. Zurkowsky alleges that Section 157(d) compelled a withdrawal since resolution of the proceedings requires consideration of both title 11 and a law of the United States regulating organizations or activities affecting interstate commerce, which is the Racketeer Influenced and Corrupt Organizations Statute (RICO), 18 U.S.C. § 1961, et seq.

18 U.S.C. § 1964(a) provides that:

[t]he district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise. . . .

A civil remedy is provided in 18 U.S.C. § 1964(c):

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including reasonable attorney's fee. The technical requirements for a RICO § 1964(c) claim must be strictly adhered to because the statute is a relatively specific one, designed to accomplish certain Congressional intent. In face of the dif-

ficulties courts have had in interpreting the provisions of RICO, and also in face of the treble damage liability which defendants are subject to, it is imperative that the court and the defendants be placed on clear notice as to what is being alleged, and what the substance of the claim is in order to facilitate a decision on the merits of the case. It is also in keeping with the policies of the Federal Rules of Civil Procedure where allegations of fraud are involved. See F.R. Civ.P. 9(b) (allegation of fraud to the state with particularity). *Ralston v. Capper*, 569 F.Supp. 1575, 1581 (D.C. Mich.1983).

Mr. Zurkowsky alleges that defendants participated in a pattern of racketeering activity which culminated in violations of 18 U.S.C.A. § 1962(b) & (d).

Sections 1962(a) thru (d) of RICO contains the prohibited activities which are made subject to criminal penalties under Section 1963 and civil penalties under Section 1964.

Section 1962(b) provides that:

It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Section 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of this section."

Section 1961 of RICO supplies the definition of the elements necessary to prove a 1962(b) violation. A "pattern of racketeering activity" is defined in Section 1961(5) as follows:

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) af-

ter the commission of a prior act of racketeering activity.

"Racketeering activity" is defined in Section 1961(1) as follows: "(1) 'Racketeering activity' means ... (D) any offense involving fraud connected with a case under title 11, ...."

■ A "fraud" claim under RICO is not identical to a state common law fraud claim; there must be an enterprise, there must be an effect upon interstate commerce before its provisions can come into effect, and there must also be two predicate offenses. *Ralston v. Capper, supra.*

In an ingenuous attempt to assert jurisdiction either through the RICO statute or Section 157(d) of the Federal Judgeship Act Mr. Zurkowsky claims that the racketeering activity consists of Bankruptcy Judge Beckerleg's denial of his right to convert to Chapter 11 thereby defrauding him of his alleged absolute right to convert pursuant to 11 U.S.C. § 706(a).

■ This is not a racketeering activity. Contrariwise, the bankruptcy judge carried out his legal responsibility in reaching a decision whether to allow the conversion to Chapter 11, given debtor's failure to resolve its problems with its principal secured creditor on two previous reorganization cases and there being no change in the circumstances. *Cf., Productions & Leasing v. Hotel Conquistador,* 573 F.Supp. 717, 724 (D.C.Nev.1982), *aff'd,* 709 F.2d 21 (9th Cir.1983).

■ Mr. Zurkowsky's complaint and subsequent motions fail to plead and prove any of the elements of Section 1962(b) or (d) claims, to wit: a "pattern or racketeering activity," which must consist of two or more predicate acts within the last ten years, the "racketeering activity"; the acquisition or maintenance of any interest in or control of an "enterprise" within the meaning of the Act; an effect on interstate

commerce and an agreement to commit the predicate acts of racketeering.

Jurisdiction pursuant to the civil provisions of the RICO statute may be invoked to prevent and restrain violations of section 1962 or to seek recovery for damages resulting from a specific violation of section 1962. 18 U.S.C. § 1964(a), (c). In view of the fact that no violations of section 1962 have been plead or proved by Mr. Zurkowsky, jurisdiction cannot be predicated under the RICO statute.

■ Likewise, since resolution of the present proceeding does not require any consideration of a law of the United States regulating organizations or activities affecting interstate commerce, withdrawal pursuant to Section 157(d) of Title 28 U.S.C.A. is not compelled.

The statute (28 U.S.C. § 157(d)) provides general discretionary authority for a district judge to withdraw any petition or proceeding from a bankruptcy judge. A party may move for withdrawal if the motion is timely made and shows cause.

■ Mr. Zurkowsky's motion was not timely made since withdrawal of the proceeding at this stage of the bankruptcy case would unduly delay administration of the case in view that an order of final distribution has been entered by the bankruptcy judge on July 8, 1985, after having considered and found proper at the final meeting of creditors the trustee's final report and account. The cause alleged by Mr. Zurkowsky, the lack of jurisdiction of the orders entered by the bankruptcy judge because of his alleged absolute right to convert to Chapter 11, was previously appealed to the district court and to the First Circuit Court of Appeals.

■ Mr. Leo Zurkowsky had a full and fair opportunity to litigate the issue which is placed before this Court, to wit: his alleged absolute right to convert the proceedings from a Chapter 7 to a Chapter 11 pursuant to 11 U.S.C.A. § 706(a).[2] Once

---

**2.** Although a court can be wrong in any decision, the possibility of a wrong decision does not undermine the rule of *res judicata* or collateral estoppel; the remedy for a wrong decision is the right to appeal, not an unlimited opportunity to bring repetitious proceedings. *Walsh v. Intern. Longshoremen's Ass'n, AFL–CIO,* 630 F.2d 864, 869 (1st Cir.1980).

Mr. Zurkowsky has been afforded the opportunity to appeal to the district court the bankruptcy judge's order denying his right to convert to Chapter 11 and to appeal to the First Circuit Court of Appeals the district court's opinion and order affirming the bankruptcy judge's order, we see no reason to permit Mr. Zurkowsky to bring another proceeding based on the same underlying issue. *See, Walsh v. Intern. Longshoremen's Ass'n., AFL–CIO, supra.* The Supreme Court described the purposes and importance of the related doctrines of *res judicata* and collateral estoppel in *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

> Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction. . . . [citations omitted] To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Id.,* at 153–154, 99 S.Ct. at 973–974.

In conclusion, the question presented here, the debtor's alleged absolute right to convert to Chapter 11 pursuant to 11 U.S. C.A. § 706(a) was litigated and decided against Mr. Zurkowsky in *In Re: El Palmar Hotel, Inc.,* Misc. No. 83–14, and relitigation of the issue is barred by collateral estoppel.

■ At the hearing held on July 19, 1985, the government's attorney requested the Court to enjoin Mr. Zurkowsky from not only using the Court as a vehicle for harassment but also from continually litigating the conversion issue. The other defendants join in the request and the motion for enjoinment was taken under advisement.

We reiterate what we had previously stated in *Castro v. United States,* 584 F.Supp. 252, 264 (D.P.R.1984), "federal courts have the inherent power to enjoin litigants who use the courts as a stage for a personal vendetta of harassment or abuse." 28 U.S.C. § 1651(a). Mr. Zurkowsky has not been deterred by this Court or the First Circuit Court of Appeals and there is no reason to believe that a mere dismissal of this action will stop Mr. Zurkowsky from filing a plethora of frivolous and meritless claims. Mr. Zurkowsky has repeatedly filed motions in several actions before this Court asserting the same claim, to wit: that the violation of 11 U.S.C.A. § 706(a) constitutes felonious activity and an offense involving fraud connected with a case under Title 11 within the meaning of the RICO act.

Mr. Zurkowsky also has far exceeded the limits of dignity and decency in the papers filed in this Court. *Heritage Hills Fellowship v. Plouff,* 555 F.Supp. 1290, 1298 (E.D. Mich.1983); *Gordon v. U.S. Department of Justice,* 558 F.2d 618 (1st Cir.1977). In this and other cases he has innundated the Court with motions made up of vituperative attacks upon federal bankruptcy court judges, federal district court judges, the clerk of the bankruptcy court, attorneys and others, all as a result of a ruling against him wherein he was denied the right to convert to a Chapter 11.[3] Almost every motion and paper filed in the cases before this Court contain language that is personally insulting and abusive to defendants. See, e.g., the complaint in the case at bar: at paragraph 5, accusing Bankruptcy Judge Beckerleg of participating in a pattern of racketeering activity which culminated in violations of the RICO act; at paragraphs 30–31, accusing two federal bankruptcy judges together with the other

---

**3.** The abusive contemptuous and accusing language included in Mr. Zurkowsky's motions moved U.S. Bankruptcy Judge Antonio I. Hernández Rodriguez to file in this Court a Certification of contempt pursuant to 28 U.S.C. § 1481 and Bankruptcy Rule 9020. Therein,

Judge Hernández states that Mr. Zurkowsky's conduct may be found to constitute criminal contempt and that as such it may warrant a penalty beyond that which may be imposed by the Bankruptcy Court.

defendants of being involved in felonious conduct; at paragraph 37, accusing the bankruptcy judges, together with the trustee and his attorney of a collusion with the debtor's attorney to cheat Mr. Zurkowsky of $10,000; at paragraph 38, accusing Bankruptcy Judge Beckerleg of defrauding the bankruptcy court in order to defraud the debtor; paragraph 42, accusing Judge Beckerleg of hideous action deserving punitive damages for issuing a fraudulent order. In the motion for summary judgment filed on February 28, 1985, among the uncontrovertible facts alleged by Mr. Zurkowsky is that both bankruptcy judges covered up for the other and are both involved in violations of the RICO Act. In the motion filed on May 29, 1985, entitled "Affidavit Showing Fraud Upon the Court," Mr. Zurkowsky states that the undersigned judge needs more encouragement to comply with the law of the United States. In the motion filed on June 17, 1985, entitled "Verified Motion Asking Honorable Pérez Giménez Whether he Will Cover-Up and Launder Violations of the RICO Act or Not?" Mr. Zurkowsky, under a heading entitled "Laudering of Corrupt Federal Bankruptcy Judges" states that the undersigned overlooked the irrefutable fact that the Bankruptcy Court has lost its subject matter jurisdiction due to the corrupt activity of its only two bankruptcy judges who are not only corrupt but they have defrauded their own court through pattern of racketeering activity. In the motion filed June 27, 1985, Mr. Zurkowsky demands that the undersigned must decide either to comply with the laws of the United States or join the defendants as another co-conspirator in the cover-up for repeated and continuous violations of the RICO Act. In Misc. 84–74, in a motion filed on October 29, 1984, Mr. Zurkowsky states that he "cannot fathom how, Honorable Torruella's perpetuation of felonious acts under color of law, resulting from the noncompliance with the ministerial duty pursuant to 11 U.S.C.A. § 706(a) can vindicate this instant tribunal's integrity or credibility. In a motion

filed on November 13, 1984, Mr. Zurkowsky alleges that "Hon. Acosta misused his position and authority to affirm a bankruptcy judge's order that is null and void *ab initio;*" "that Hon. Acosta's interest is purely personal at this stage" and that after all, "there is a possible conviction for felonious activity at stake;" that "there is no respect for the law by the officers in the judiciary, anarchy is only a step away." This type of conduct by a litigant,[4] even a *pro se* litigant, cannot and will not be tolerated by this Court.

Under the circumstances present in this case and by Mr. Zurkowsky, it is proper for this Court to issue an injunction against relitigation, pursuant to 28 U.S.C. § 1651(a).

WHEREFORE, in view of the above, IT IS ORDERED, ADJUDGED AND DECREED that the case be and is hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that plaintiff, Mr. Leo Zurkowsky, be and is hereby PERMANENTLY AND FOREVER ENJOINED from filing additional pleadings in this case and other related cases (Misc. Nos. 83–14, 84–53, 84–74) and from relitigating or attempting to relitigate, by commencing any lawsuit or other legal proceeding against the district court judges, bankruptcy court judges, clerks of the courts, attorneys, trustees, and the defendants named in the complaint in Civil No. 85–0162 with respect to the denial of his right to convert to Chapter 11 pursuant to Section 706(a) or to the events arising out of matters set forth in this case or its prior litigation over the conversion denial.

IT IS FURTHER ORDERED that if Mr. Zurkowsky believes that this Order is erroneous, he shall file an appeal rather than a new law suit. If, however, Mr. Zurkowsky chooses to file a new lawsuit and thereby defy this Court, defendants are directed to file a petition to cite Mr. Zurkowsky for contempt. The sanctions that could follow from the violation of this Order are a possi-

---

4. At the hearing held on July 19, 1985, Mr. Zurkowsky was advised that although he was litigating *pro se* he was expected to act and behave as an officer of the Court.

ble fine and/or imprisonment as punishment for contempt of this Court. *See, Heritage Hills Fellowship v. Plouff, supra.*

IT IS FURTHER ORDERED that Mr. Zurkowsky be assessed costs pursuant to 28 U.S.C. § 1920 and F.R.Civ.P. 54(d), and, thus, he is liable for the costs generated by the proceedings in this case. Costs to defendants.

IT IS SO ORDERED.